## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into among the United States of America, acting through the United States Department of Justice and on behalf of the National Nuclear Security Administration (collectively the "United States") and Wise Services, Inc. ("Wise"), through their authorized representatives. Wise is hereafter referred to as "Defendant." The United States and the Defendant are hereafter collectively referred to as "the Parties."

## RECITALS

A.      The NNSA is a semi-autonomous agency within the United States Department of Energy ("DOE") responsible for the management and security of the nation's nuclear weapons, nuclear nonproliferation, and naval reactor programs. NNSA manages a program for the long-term disposition of weapons-grade plutonium by converting the materials to nuclear fuel for use in commercial reactors. As part of this program, NNSA administered the design, construction, and operation of the Mixed Oxide Fuel Fabrication Facility (the "MOX Project") at the Savannah River Site in Aiken, South Carolina.

B.      Defendant Wise is an Ohio corporation with a principal place of business in Dayton, Ohio. Wise is a small, minority-owned business contractor formed in 1993 to work on construction labor projects at a DOE facility in Ohio. Between 2008 and 2016, Wise worked as a subcontractor for MOX Services, LLC, formerly known as CB&I AREVA MOX Services, LLC ("MOX") and entered into three subcontracts with MOX to perform services at the MOX Project (the "Wise Subcontracts").

C. On February 14, 2019, the United States filed an action in the United States District Court of South Carolina captioned *United States v. CB&I MOX Services, LLC and Wise Services, Inc.*, C.A. No. 1:19-cv-00444-TLW (the "Civil Action").

D. The United States contends that it has certain civil claims against Wise, as asserted in the Civil Action, arising from Wise's submission of false and fraudulent invoices to MOX for non-existent materials under the Wise Subcontracts and arising from allegations of improper kickbacks provided by Wise to MOX personnel, during the period from January 1, 2008, through December 31, 2015 (the "Covered Conduct").

E. Wise denies any and all claims made in the Civil Action.

F. This Settlement Agreement is neither an admission of liability by Wise, nor a concession by the United States that the Civil Action is not well founded.

To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, and in consideration of the mutual promises and obligations of this Settlement Agreement, the Parties agree and covenant as follows:

TERMS AND CONDITIONS

1. Defendant agrees to pay the United States the sum of $302,500 (three hundred two thousand five hundred dollars) (the Settlement Amount). Within thirty (30) days of the Effective Date of this Agreement, Defendant will make a payment to the United States in the amount of $50,000 (fifty thousand dollars).

   A. Over a period of five (5) years, Defendant will pay the remaining $252,500 (two hundred fifty-two thousand five hundred dollars), plus interest at one percent (1%) per annum, pursuant to the payment schedule identified below (the "Payments Over Time").

B. Schedule of Payments Over Time

1. The first annual amount of the Payment Over Time shall be $80,833 (eighty thousand eight hundred thirty-three dollars) and shall be paid in four equal quarterly installments on or before March 31, June 30, September 30, and December 31, 2023.

2. The second annual amount of the Payment Over Time shall be $80,833 (eighty thousand eight hundred thirty-three dollars) and shall be paid in four equal quarterly installments on or before March 31, June 30, September 30, and December 31, 2024.

3. The third annual amount of the Payment Over Time shall be $80,833 (eighty thousand eight hundred thirty-three dollars) and shall be paid in four equal quarterly installments on or before March 31, June 30, September 30, and December 31, 2025.

4. The fourth annual amount of the Payment Over Time shall be $5,000 (five thousand dollars) and shall be paid in four equal quarterly installments on or before March 31, June 30, September 30, and December 31, 2026.

5. The fifth annual amount of the Payment Over Time shall be $5,000 (five thousand dollars) and shall be paid in four equal quarterly installments on or before March 31, June 30, September 30, and December 31, 2027.

C.  Interest shall accrue on the unpaid Settlement Amount as indicated above. Collectively the Settlement Amount and interest received by the United States shall be referred to as the Settlement Payments.

D.  In addition to the Settlement Payments, the Parties agree that:

1.  If, within the five (5) years from the Effective Date of this Agreement, Wise's, Wise Construction Company, Inc.'s ("WCCI") and/or D.F.A. Properties' ("DFA") (collectively referred to as the "Company") consolidated revenues as shown on its independent accountant's review report exceed $6,000,000 in any one year, the Company shall pay the United States an amount equal to four percent (4%) of the amount in excess of $6,000,000 ("Revenue Contingency").  The Company will submit to the Financial Litigation Unit of the United States Attorney's Office for the District of South Carolina its independent accountant's review report, federal tax returns, and any other supporting documentation requested by the United States within one hundred fifty (150) days after the Company's fiscal year end and any payment due under this Revenue Contingency will be due and payable to the United States within one hundred eighty (180) days of the Company's fiscal year end. (Example:  If consolidated revenues total $7,000,000, the Company will remit $40,000 (calculated as: $7,000,000-$6,000,000=$1,000,000 x 4%= $40,000)).

4

2. If, within the five (5) years from the Effective Date of this Agreement, Wise's, WCCI's and/or DFA's assets, including without limitation equipment or real estate, including vacant lots and other land, are sold, liquidated, or transferred into a non-affiliated entity, then the Company shall pay the United States ten percent (10%) of the net sale proceeds. Net sale proceeds is defined as gross sales proceeds less any federal, state, and local taxes or fees, and transaction closing costs. (Example: If net sale proceeds total $3,000,000, the Company will remit $300,000 (calculated as: $3,000,000 x 10% = $300,000)). This paragraph shall not apply where the gross sale proceeds of a particular transaction are less than $10,000.

3. If, within the five (5) years from the Effective Date of this Agreement, Wise, WCCI, and/or DFA sells (or has sold during the preceding fiscal year end) assets that constitute fifty percent (50%) or more of the total assets of the Company, then the Company shall pay the United States ten percent (10%) of the net sale proceeds and all payments remaining under the Settlement Agreement will become due and payable to the United States within fifteen (15) days after the transaction.

E. The Settlement Amount may be prepaid, in whole or in part, without penalty or premium.

2.  Subject to the exceptions in Paragraph 3 (concerning reserved claims) below and subject to Paragraph 4 (concerning disclosure of assets), Paragraph 8 (concerning default), and Paragraph 9 (concerning bankruptcy) below, and upon the United States' receipt of the Settlement Amount, plus interest due under Paragraph 1, the United States releases Defendant Wise together with its corporate successors and assigns, current and former parent companies, direct and indirect subsidiaries affiliated companies, corporate divisions, or current and former corporate owners, in each case, from any civil or administrative monetary claim the United States has for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Anti-Kickback Act, 41 U.S.C. §§ 8701-8707; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; or the common law theories of breach of contract, payment by mistake, unjust enrichment, and fraud.

3.  Notwithstanding the releases given in Paragraph 2 of this Agreement, or any other term of this Agreement, the following claims and rights of the United States are specifically reserved and are not released:

    a.  Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

    b.  Any criminal liability;

    c.  Except as explicitly stated in this Agreement, any administrative liability or enforcement right, or any administrative remedy, including the suspension and debarment rights of any federal agency;

      d.      Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;

      e.      Any liability based upon obligations created by this Agreement;

      f.      Any liability of individuals;

      g.      Any liability for express or implied warranty claims or other claims for defective or deficient products or services, including quality of goods and services; and

      h.      Any liability for personal injury or property damage or for other consequential damages arising from the Covered Conduct.

      4.      Defendant has provided sworn financial disclosures and supporting documents (the "Financial Disclosures") to the United States and the United States has relied on the accuracy and completeness of those Financial Disclosures in reaching this Agreement. Defendant warrants that the Financial Disclosures are complete, accurate, and current as of the Effective Date of this Agreement. If within the five (5) years from the Effective Date of this Agreement the United States learns of asset(s) in which Defendant had an interest of any kind as of the Effective Date of this Agreement (including, but not limited to, promises by insurers or other third parties to satisfy Defendant's obligations under this Agreement) that were not disclosed in the Financial Disclosures, or if the United States learns of any false statement or misrepresentation by Defendant on, or in connection with, the Financial Disclosures, and if such nondisclosure, false statement, or misrepresentation changes the estimated net worth set forth in the Financial Disclosures by $50,000 (fifty thousand dollars) or more, the United States may at its option: (a) rescind this Agreement and reinstate its suit or file suit based on the

7

Covered Conduct or (b) collect the full Settlement Amount in accordance with the Agreement plus one hundred percent (100%) of the net value of Defendant's previously undisclosed assets. Defendant agrees not to contest any collection action undertaken by the United States pursuant to this provision, and agrees that it will immediately pay the United States the greater of (i) a ten percent (10%) surcharge of the amount collected in the collection action, as allowed by 28 U.S.C. § 3011(a), or (ii) the United States' reasonable attorneys' fees and expenses incurred in such an action. In the event that the United States, pursuant to this paragraph rescinds this Agreement, Defendant waives and agrees not to plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any civil or administrative claims that (a) are filed by the United States within one hundred twenty (120) calendar days of written notification to Defendant that this Agreement has been rescinded, and (b) relate to the Covered Conduct, except to the extent these defenses were available on June 22, 2016**.**

     5.     Defendant waives and shall not assert any defenses Defendant may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action.

     6.     Defendant fully and finally releases the United States, its agencies, officers, agents, employees, and servants, from any claims (including attorneys' fees, costs, and expenses of every kind and however denominated) that Defendant has asserted,

could have asserted, or may assert in the future against the United States, its agencies, officers, agents, employees, and servants, related to the Covered Conduct or the United States' investigation or prosecution thereof.

      7.    a.    Unallowable Costs Defined: All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47) incurred by or on behalf of Defendant, and its present or former officers, directors, employees, shareholders, and agents in connection with:

    (1)    the matters covered by this Agreement and any related plea agreement;

    (2)    the United States' audit(s) civil and any criminal investigation(s) of the matters covered by this Agreement;

    (3)    Defendant's investigation, defense, and corrective actions undertaken in response to the United States' audit(s) and civil [and any criminal] investigation(s) in connection with the matters covered by this Agreement (including attorneys' fees);

    (4)    the negotiation and performance of this Agreement; and

    (5)    the payment Defendant makes to the United States pursuant to this Agreement,

are unallowable costs for government contracting purposes (hereinafter referred to as Unallowable Costs).

      b.    Future Treatment of Unallowable Costs: Unallowable Costs will be separately determined and accounted for by Defendant, and Defendant shall not

charge such Unallowable Costs directly or indirectly to any contract with the United States.

        c.      Treatment of Unallowable Costs Previously Submitted for Payment: Within ninety (90) days of the Effective Date of this Agreement, Defendant shall identify and repay by adjustment to future claims for payment or otherwise any Unallowable Costs included in payments previously sought by Defendant or any of its subsidiaries or affiliates from the United States. Defendant agrees that the United States, at a minimum, shall be entitled to recoup from Defendant any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted requests for payment. The United States, including the Department of Justice and/or the affected agencies, reserves its rights to audit, examine, or re-examine Defendant's books and records and to disagree with any calculations submitted by Defendant or any of its subsidiaries or affiliates regarding any Unallowable Costs included in payments previously sought by Defendant, or the effect of any such Unallowable Costs on the amount of such payments.

8.      The Settlement Amount represents the amount the United States is willing to accept in compromise of its civil claims arising from the Covered Conduct due solely to Defendant's financial condition as reflected in the Financial Disclosures referenced in Paragraph 4.

        a.      In the event that Defendant fails to pay the Settlement Amount as provided in the payment schedule set forth in Paragraph 1 above, Defendant shall be in Default of Defendant's payment obligations ("Default"). The United States will provide a written Notice of Default, and Defendant shall have an opportunity to cure such Default within

twenty-one (21) calendar days from the date of receipt of the Notice of Default by making the payment due under the payment schedule and paying any additional interest accruing under the Settlement Agreement up to the date of payment.  Notice of Default will be delivered to Defendant, or to such other representative as Defendant shall designate in advance in writing.  If Defendant fails to cure the Default within twenty-one (21) calendar days of receiving the Notice of Default and in the absence of an agreement with the United States to a modified payment schedule ("Uncured Default"), the remaining unpaid balance of the Settlement Amount shall become immediately due and payable, and interest on the remaining unpaid balance shall thereafter accrue at the rate of twelve percent (12%) per annum, compounded daily from the date of Default, on the remaining unpaid total (principal and interest balance).

      b.      In the event of Uncured Default, Defendant agrees that the United States, at its sole discretion, may (i) retain any payments previously made, rescind this Agreement and pursue the Civil Action or bring any civil and/or administrative claim, action, or proceeding against Defendant for the claims that would otherwise be covered by the releases provided in Paragraph 2 above, with any recovery reduced by the amount of any payments previously made by Defendant to the United States under this Agreement; (ii) take any action to enforce this Agreement in a new action or by reinstating the Civil Action; (iii) offset the remaining unpaid balance from any amounts due and owing to Defendant and/or affiliated companies by any department, agency, or agent of the United States at the time of Default or subsequently; and/or (iv) exercise any other right granted by law, or under the terms of this Agreement, or recognizable at common law or in equity.  The United States shall be entitled to any other rights granted

by law or in equity by reason of Default, including referral of this matter for private collection. In the event the United States pursues a collection action, Defendant agrees immediately to pay the United States the greater of (i) a ten percent (10%) surcharge of the amount collected, as allowed by 28 U.S.C. § 3011(a), or (ii) the United States' reasonable attorneys' fees and expenses incurred in such an action. In the event that the United States opts to rescind this Agreement pursuant to this paragraph, Defendant waives and agrees not to plead, argue, or otherwise raise any defenses of statute of limitations, laches, estoppel or similar theories, to any civil or administrative claims that are (i) filed by the United States against Defendant within one hundred twenty (120) days of written notification that this Agreement has been rescinded, and (ii) relate to the Covered Conduct, except to the extent these defenses were available on June 22, 2016. Defendant agrees not to contest any offset, recoupment, and/or collection action undertaken by the United States pursuant to this paragraph, either administratively or in any state or federal court, except on the grounds of actual payment to the United States.

     9.     In exchange for valuable consideration provided in this Agreement, Defendant acknowledges the following:

     a.     Defendant has reviewed its financial situation and warrants that it is solvent within the meaning of 11 U.S.C. §§ 547(b)(3) and 548(a)(1)(B)(ii)(I) and shall remain solvent following payment to the United States of the Settlement Amount.

     b.     In evaluating whether to execute this Agreement, the Parties intend that the mutual promises, covenants, and obligations set forth herein constitute a contemporaneous exchange for new value given to Defendant, within the meaning of 11

U.S.C. § 547(c)(1), and the Parties conclude that these mutual promises, covenants, and obligations do, in fact, constitute such a contemporaneous exchange.

      c.     The mutual promises, covenants, and obligations set forth herein are intended by the Parties to, and do in fact, constitute a reasonably equivalent exchange of value.

      d.     The Parties do not intend to hinder, delay, or defraud any entity to which Defendant was or became indebted to on or after the date of any transfer contemplated in this Agreement, within the meaning of 11 U.S.C. § 548(a)(1).

      e.     If Defendant's obligations under this Agreement are avoided for any reason (including but not limited to, through the exercise of a trustee's avoidance powers under the Bankruptcy Code) or if, before the Settlement Amount is paid in full, Defendant or a third party commences a case, proceeding, or other action under any law relating to bankruptcy, insolvency, reorganization, or relief of debtors seeking any order for relief of Defendant's debts, or to adjudicate Defendant as bankrupt or insolvent; or seeking appointment of a receiver, trustee, custodian, or other similar official for Defendant or for all or any substantial part of Defendant's assets:

          (i) the United States may rescind the releases in this Agreement and bring any civil and/or administrative claim, action, or proceeding against Defendant for the claims that would otherwise be covered by the releases provided in Paragraph 2 above;

          (ii) the United States has an undisputed, noncontingent, and liquidated allowed claim against Defendant in the amount of $11,047,135.49, less any payments received pursuant to Paragraph 1 of this Agreement, provided, however, that such

payments are not otherwise avoided and recovered from the United States by a receiver, trustee, creditor, custodian, or similar official.

      f.      Defendant agrees that any civil and/or administrative claim, action, or proceeding brought by the United States under Paragraph 9.e is not subject to an "automatic stay" pursuant to 11 U.S.C. § 362(a) because it would be an exercise of the United States' police and regulatory power.  Defendant shall not argue or otherwise contend that the United States' claim, action, or proceeding is subject to an automatic stay and, to the extent necessary, consents to relief from the automatic stay for cause under 11 U.S.C. § 362(d)(1).  Defendant waives and shall not plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any such civil or administrative claim, action, or proceeding brought by the United States within one hundred twenty (120) days of written notification to Defendant that the releases have been rescinded pursuant to this paragraph, except to the extent such defenses were available on June 22, 2016.

      10.      This Agreement is intended to be for the benefit of the Parties only, and their respective successors, transferees, heirs, and assigns.

      11.      Upon receipt of the initial $50,000 payment described in Paragraph 1 above, the Parties shall promptly sign and file in the Civil Action a Joint Stipulation of Dismissal of the Civil Action pursuant to Rule 41(a)(1).

      12.      Each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

      13.      Each Party and signatory to this Agreement represents that it freely and voluntarily enters into this Agreement without any degree of duress or compulsion.

14. This Agreement is governed by the laws of the United States. The exclusive venue for any dispute relating to this Agreement is the United States District Court for the District of South Carolina. For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

15. This Agreement constitutes the complete agreement between the Parties. This Agreement may not be amended except by written consent of the Parties.

16. The undersigned counsel represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

17. This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

18. This Agreement is binding on Defendant's successors, transferees, heirs, and assigns.

19. All Parties consent to the United States' disclosure of this Agreement, and information about this Agreement, to the public.

20. This Agreement is effective on the date of signature of the last signatory to the Agreement (Effective Date of this Agreement). Facsimiles of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

THE UNITED STATES OF AMERICA

DATED: 11/17/2022   BY: _____
DON WILLIAMSON
RORY SKAGGS
Trial Attorneys
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
       and

DATED: 11/17/2022   BY: _____
JOHANNA C. VALENZUELA
SHERIA A. CLARKE
Assistant United States Attorney
United States Attorney's Office
District of South Carolina


WISE SERVICES, INC.


DATED:              BY: _____
DAVID F. ABNEY II
President


DATED:              BY: _____
MARY E. LENTZ
CASSANDRA A. RICE
Foos & Lentz LLP
Counsel for Wise Services, Inc.

16

THE UNITED STATES OF AMERICA

DATED:                BY: _____
                         DON WILLIAMSON
                         RORY SKAGGS
                         Trial Attorneys
                         Commercial Litigation Branch
                         Civil Division
                         U.S. Department of Justice
                              and

DATED:                BY: _____
                         JOHANNA C. VALENZUELA
                         SHERIA A. CLARKE
                         Assistant United States Attorney
                         United States Attorney's Office
                         District of South Carolina

WISE SERVICES, INC.

DATED: 11-17-2022     BY: _____
                         DAVID T. ABNEY II
                         President

DATED: 1-17-2023      BY: _____
                         MARY E. LENTZ
                         CASSANDRA A. RICE
                         Foos & Lentz LLP
                         Counsel for Wise Services, Inc.